## ATWOOD vs. NORTON.

The question whether an agreement in writing, for the sale and conveyance of land, is merged in, or extinguished by, a deed subsequently executed by the vendor, is a question of construction, as to the intent of the parties, to be gathered from a consideration of the entire contents of the instruments. Where the things stipulated in the agreement, to be done by the vendor, are distinct in their character, and may be done at successive times, unless the performance of one of the things covenanted to be done, by the execution of a deed, can well be supposed as designed by the parties to be a complete

Atwood *v.* Norton.

execution and consummation of the entire contract, and accepted as such, the doctrine of merger, waiver, or full performance should not be applied.

Thus where the agreement contained covenants, 1. For the conveyance of a tract of land; 2. For the conveyance of a water power; 3. For the conveyance of the foundation of a building, and of an iron water wheel and shaft, &c., for the consideration of $5800; and 4. For raising and filling in the grounds, for the purposes of a road, such raising and filling to be completed within sixty days; and the vendor, long before the time when by the contract the filling in was to be done and the road was to be built, executed a deed, conveying to the purchaser the premises agreed to be conveyed; *Held* that no presumption could properly arise therefrom, that the work was done, or its performance waived; and that the deed was to be deemed merely a conveyance of the land and its immediate appurtenances, and not a complete execution of the articles of agreement.

*Held also*, that the covenants in the contract should not be construed to merge in the conveyance, for the further reason that, though connected with the beneficial enjoyment of the lands, they related to an improvement to be made *off* from the lands; viz. to the grant or construction of a way, independent of, and collateral to, the lands conveyed.

By an agreement executed by and between Norton & Cushman of the first part, and Atwood, Cole & Crane of the second part, the parties of the first part sold and agreed to convey in fee certain lots of land to the parties of the second part. And the vendors covenanted and agreed to raise and fill in a portion of the grounds, so as to provide a good road for the purchasers, who should be permitted to use such road until an avenue in lieu of it should be opened and filled; and to take immediate possession of the bargained premises. The filling in of the road was to be done within 25 days after the date of the articles, so as to be passable for loads—and to be completed within 60 days after date. The breach alleged was that Norton & Cushman did not, within said 25 days, raise and fill in the grounds so as to provide a *good* road; nor was *any* road made or provided convenient for loads to pass over; nor was the filling completed within 60 days, but on the contrary they wholly neglected to make said road or perform said filling; whereby the covenant was broken.

*Held*, 1. That this was well pleaded as a proper and perfect breach of the covenant; but that it was only an allegation of a single breach, occurring as to one part of the act to be done at the expiration of 25 days, and as to the other part, at the expiration of 60 days after the date of the articles; and was not an allegation of successive or continuous breaches occurring from time to time afterwards. And therefore, that upon the face of the complaint the suit was in fact brought only to recover damages for that single breach or violation of the covenant.

2. That a breach thus alleged was ample and comprehensive enough to embrace all damages, immediately or remotely flowing from an infraction of the covenant. That the act to be done being single and indivisible, per-

formance would discharge the entire obligation, and non-performance exposed the offending party to the penalties of an entire breach.

3. That the cause of action, if it arose at all, arose at the end of 60 days; and if the road was not then completed, a full and perfect cause of action existed, as for a *total* failure to perform, and the contract was to be treated as broken completely.

4. That Atwood, Cole & Crane being in the possession and ownership of the premises, at the time the breach occurred, and interested in the covenants contained in the agreement, were the proper parties to sue for a breach of such covenants. And that a *subsequent* sale of the lots with the appurtenances, to Atwood, by his co-owners, Cole & Crane, by an agreement not purporting to convey any right or cause of action which had already accrued by breach of the original contract, nor purporting to convey *in terms*, any right or interest covered by the covenants in question, did not authorize Atwood to sue for a breach of those covenants, without joining Cole & Crane with him, as plaintiffs.

5. That the breach of the covenant converted the claim into a chose in action, for which the remedy must be sought by the parties interested in it at the time the cause of action accrued; unless it had been subsequently assigned.

THIS is an action instituted to recover damages for covenants broken. To the plaintiff's complaint the defendant interposed two grounds of demurrer, viz: 1. That the complaint does not state facts constituting a cause of action. 2. That a defect of parties appears, in not joining two others, Cole and Crane, as plaintiffs in the action. These issues of law were tried at the Rensselaer circuit and special term, before Mr. Justice WRIGHT, and were decided by him in favor of the defendant. The cause now came before the general term, by appeal on the part of the plaintiff from the judgment on that decision. The material facts alleged in the complaint are: 1. That on the 3d day of June, 1845, the defendant and John P. Cushman, since deceased, party of the first part, executed and delivered articles of agreement under seal, whereby they sold and agreed to convey in fee, nine lots of land in the city of Troy, bounded easterly by 2d street, southerly by Canal avenue, and westerly by an alley between 1st and 2d streets, to the plaintiff, Spencer Cole and Isaac W. Crane, parties of the second part, who were to take immediate possession of the premises. The defendant and Cushman, in said articles of

agreement further agreed as follows, viz: To raise the ground by filling in from 4th street at the bridge to 2d street, so that a good road should be provided for the party of the first part, (evidently meaning the party of the second part,) plaintiff and Cole & Crane, to 2*d street, at the premises to be conveyed,* to the height of 4th street at the bridge. That "said road may be used by the party of the second part until the avenue to be opened in lieu of it from 2d street to 4th street, is opened and filled fit for use as a road." That the party of the first part would do the filling within 25 days needful to make the way from 4th street to 2d street, convenient for loads to pass over it, and complete the filling as above stipulated within 60 days from the date, (June 3, 1845.) That by a warranty deed of the 5th June, 1845, the defendant and said Cushman, and their respective wives, for the consideration of $5800 conveyed to the plaintiff and said Cole & Crane, and to their heirs and assigns, all the lands, premises, water power, and the appurtenances, "*agreed to be conveyed*" in the articles of agreement. That the plaintiff and Cole & Crane took immediate possession of the said lands and premises, and erected and built thereon an iron foundry and the necessary buildings, erections, structures, shop, fixtures, &c. at an expenditure and value of $12,000. That on the 1st February, 1847, by articles of agreement under seal, Cole & Crane agreed to sell and convey to the plaintiff, his heirs and assigns, within one year, all their right, title and interest in the nine lots above described, together with all the appurtenances thereunto belonging or in any wise appertaining, and all the privileges and rights which the plaintiff and Cole & Crane purchased and received of said Norton and Cushman. That by agreement of same date (1st February, 1847,) it was covenanted between the plaintiff and Cole & Crane, that the said real estate was to continue after that date at the risk of the plaintiff; and in case of loss by fire, the insurance effected thereon should be for the plaintiff's benefit alone. That on the 3d February, 1847, the plaintiff agreed with Cole & Crane, in case of loss by fire, to appropri-

ate all the avails of the insurance money to erecting buildings and repairing and improving said real estate. That forthwith, after making said stipulations and agreements, the property both real and personal intended to be thereby sold and con- veyed, was duly delivered to the plaintiff by Cole & Crane, and the plaintiff went into the sole use, *occupation and pos- session, and for his sole and only use, benefit and behoof.* That on the 1st February, 1848, the said Cole & Crane, in pursuance of this agreement, conveyed to the plaintiff and his heirs and assigns, all the said nine lots of land (by metes and bounds) and all the privileges and rights, which the plaintiff and Cole & Crane purchased and received of the defendant and Cushman, and all other buildings, machinery and appurten- ances thereunto belonging, or in anywise appertaining. The breaches alleged were these: 1. That Cushman and the de- fendant did not, nor did either of them, raise the ground by filling in from 4th street to 2d street, so that a good road was provided, nor was it made convenient for loads to pass over it, as agreed, &c. within 25 days after date of the agreement. 2. Nor was any road made and provided by Cushman & Nor- ton or either of them; nor was the filling in to be done, exe- cuted and completed within 60 days, so as to raise at the same height at 2d street as at 4th street, *but they wholly neg- lected to make said road,* or do and perform such filling up, whereby such covenants were broken. The complaint con- tained the following allegations of special damage: 1. That from and after the 1st February, 1847, the plaintiff had a large amount of teaming, &c. to and from the Empire Foundry property, &c., and the filling up not being done and the road not being provided, the plaintiff sustained loss for extra ex- penses in teaming, &c., to $500. 2. The plaintiff leased a machine shop to John Rogers, and he abandoned it because the road was not provided, and the plaintiff lost the rent of the same. Damages $500. 3. That on the 26th of March, 1847, the foundry, machine shops and machinery were destroy- ed by fire, loss $15,000, insurance received by the plaintiff

only $5000; that the property would not have been consumed by fire had a road been made, so that fire engines could have reached there. 4. That in rebuilding, the cost and expense of carrying building materials was greatly enhanced, at least $500.

*H. Z. Hayner,* for the plaintiff.

*J. H. Reynolds,* for the defendants.

*By the Court,* HOGEBOOM, J. The demurrer which was sustained at the special term presented two grounds of objection to the complaint: 1. The want of facts sufficient to constitute a cause of action. 2. A defect of parties, for not having joined Cole and Crane with the plaintiff as parties plaintiff.

I. Assuming, for the present, that the proper parties are before the court, is a cause of action sufficiently alleged? The defendant argues that it is not, for the reason that as the complaint does not allege that the covenants for the breach of which the action is brought were contained in the deed of 5th June, 1845, they must be presumed to have been waived or extinguished, or merged in the deed; that after the execution of the deed the agreement must be regarded as null and void, and the deed as the sole measure and interpreter of the rights of the parties. I think this is too narrow and rigorous a construction of the contract, for these reasons: 1. The deed, though no specific time is named in the articles of agreement for its execution, was in fact executed on the 5th day of June, 1845, (or bears date on that day,) only two days after the date of the articles of agreement, and a long time prior to the period when the filling in was to be done, and the road was to be built; and therefore no presumption properly arises that the work was done or its performance waived. 2. There seems to be no legal necessity for repeating in the deed the stipulations in the articles of agreement; they are both sealed instruments, and of equal dignity. The conveyance of the lands does not

on its face purport to be, nor can it, according to the articles, be deemed to be a complete execution of the articles: it is only a conveyance of the land and its immediate appurtenances. 3. The covenants in question, though connected with the beneficial enjoyment of the lands, relate to an improvement to be made *off* from the lands; they relate to the grant or construction of a way, independent of and collateral to the lands conveyed, and therefore should not be construed to merge in the conveyance. 4. The question whether the original agreement is merged in or extinguished by the deed, is a question of construction as to the intent of the parties, to be gathered from a consideration of the entire contents of the instruments. The articles provide in fact, 1st. For the conveyance of a tract of land; 2d. For the conveyance of a water power; 3d. For the conveyance of the foundation of a building, and of an iron water wheel and shaft, &c.; these for the consideration of $5800; 4th. For raising and filling in the grounds for the purposes of a road, and providing for the time when the same shall be completed. Now these are distinct in their character, and may well be done at successive times; and unless the conveyance of one, from its terms or the surrounding circumstances, can well be supposed as designed by the parties to be a complete execution and consummation of the entire contract, and accepted as such, the doctrine of merger, waiver or full performance should not be applied to it. (*See Houghtaling* v. *Lewis,* 10 *John.* 299; *Bull* v. *Willard,* 9 *Barb.* 644; *Bogert* v. *Burkhalter,* 1 *Denio,* 125.)

For these reasons I think that the complaint contains a sufficient statement of facts to constitute a cause of action.

II. Assuming this to be so, the second and principal question arises, Are all the proper parties plaintiff before the court for the enforcement of that part of the contract whose breach is alleged? The action is for a breach of the covenant to raise and fill in the ground, so as to provide a good road. This covenant was made with Atwood, Cole & Crane. Atwood alone sues for its breach. Prima facie the others are equally

and jointly interested with him, and the defendant has a right to insist that they shall be joined. Are any facts alleged in the complaint, showing a sufficient reason for not uniting them in the suit? Atwood, Cole & Crane went into immediate possession, and they jointly received the deed of the premises, the beneficial enjoyment of which is supposed to have been injuriously affected by the non-construction of this road. This filling in was to have been done, so far as to make it convenient for loads to pass over, within 25 days of the date of the articles, and to have been completed within 60 days of the same date. The breach alleged is, that it was not so done in either particular. At the expiration of those respective periods, therefore, the breach of covenant had occurred and the cause of action was complete, I think as complete as it ever could be; and if an action had then been brought, entire damages were recoverable, the same as if the filling in should *never thereafter* be done. Let us examine briefly the complaint, and also the adjudged cases, and see in the first place whether in point of fact successive and continuous breaches are alleged, and whether, in the second place, in regard to the matter covered by the breach, this is not a case of one single and indivisible act or operation, a failure to perform which visited the defaulting party with damages as for a complete and perpetual non-performance.

By the covenant prosecuted, the defendant and Cushman agreed to raise and fill in the grounds from 4th street to 2d street, so as to provide a good road for the party of the second part, who should be permitted to use such road until an avenue to be opened in lieu of it should be opened and filled, fit for use as a road, and who should also be permitted to take immediate possession of the bargained premises. The filling in of the road to be done within 25 days of the date of the articles, so far as to make it convenient for loads to pass over it, and to be completed within 60 days of the same date. The breach alleged, is, that the defendant and Cushman did not, within said 25 days, raise and fill in the grounds so as to provide a *good* road ; nor

was *any* road made or provided convenient for loads to pass over; nor was the filling completed within 60 days, but on the contrary they wholly neglected to make said road or perform said filling, whereby the covenant was broken. I think this is well pleaded as a proper and perfect breach of the covenant in question, but at the same time that it is but the allegation of a single breach occurring as to one part of the act to be done at the expiration of 25 days, and as to the other part at the expiration of sixty days after the date of the articles; and not an allegation of successive or continuous breaches occurring from time to time afterwards. And therefore that upon the face of the complaint, the suit is in fact brought only to recover damages for that single breach or violation of the covenant.

I think also, in the second place, that a breach thus alleged is ample and comprehensive enough to embrace all damages immediately or remotely flowing from an infraction of the covenant. The act is single and entire, and is not to be performed in detached parts or at successive periods, or to be renewed from time to time. When once done it is completely done, and the duty is at an end. It is not in its nature a continuing obligation, but is fully and forever discharged when the road is completed. There is no obligation to repair or to rebuild, and if work of that kind is needed, I think it must be performed by the party using the road and thus creating the necessity for repairs, after the road shall have been originally delivered to or accepted by the party for whose benefit it was made. The act to be performed being thus single and indivisible, performance discharges the entire obligation; non-performance exposes the offending party to the penalties of an entire breach. The cause of action, if it arises at all, arises at the end of 60 days, and is then full and complete. If the road, as stipulated, is not then complete, a full and perfect cause of action exists; there has been a total failure to perform. All the damages which the suffering party can ever be entitled to recover for the non-making or completion of the road, have in

judgment of law then accrued. We are to treat the contract as broken completely, once and forever. It is no answer to this view of the case to say that the defendant may thereafter build the road. No such fact appears. He has not done so. When some further act is done on the one side or on the other, some new rights or obligations may possibly arise; but assuming as we must in the disposition of the case that the road never has been and never will be completed, we are to award damages accordingly. If no fresh act intervenes, no further damages are recoverable. The act is single and entire— the breach single and complete at once; and the damages are perfect and are to be awarded upon the assumption of absolute and perpetual non-performance.

I think these are all legitimate and logical results from the familiar rule that only one action can be maintained for the breach of an entire contract. (*Bendernagle* v. *Cocks*, 19 *Wend.* 207. *Sedgwick on Damages*, 224.) To apply a different rule, the contract must be a *continuing* contract, and this is not of that character. The road is to be built—not forever thereafter to be maintained or kept in repair. The obligation to *repair*, or to keep in repair, is construed as a continuing obligation; because from its very nature it is applicable to successive acts of waste or dilapidation consequent upon continued use of property. (*Crain* v. *Beach*, 2 *Comst. Rep.* 86.) I doubt very much whether successive actions will lie for damages accruing by the mere lapse of time from one single neglect to repair, without a fresh breach of duty arising from some new and affirmative act or changed relation of the parties. (See *Shaffer* v. *Lee*, 8 *Barb.* 420.) But I do not deem it necessary to discuss that question. The cases in the books are somewhat conflicting, but the confusion arises mostly from the difficulty of determining in the particular case as to the continuity of the obligation. I know of no case, where the act is single and the breach is total, that entire damages are not recoverable.

Several cases have been decided bearing on this question,

in which entire damages were recovered, which seem to possess many more of the characteristics of a continuing contract than the present. Thus in *Pool* v. *Pool*, (1 *Hill*, 580,) although a verdict for the plaintiff was set aside, it was assumed that on suit brought for a breach of a contract for the support of the plaintiff's minor son until he became 21 years of age, a failure to furnish such support entitled the party to entire damages for the whole unexpired term. In *Fish* v. *Folley*, (6 *Hill*, 54,) where the contract was to furnish a continued supply of water to the plaintiff's mill, a failure to do so was held to entitle the party to entire damages as upon an entire and continued non-performance, and to be a bar to a subsequent suit brought to recover for a subsequent deficiency. In *Shaffer* v. *Lee*, (8 *Barb.* 412,) the contract was to support husband and wife during their lives, and a suit being brought for a failure to furnish the support, was held to entitle the plaintiff, on proof of the breach, to entire damages for the residue of their lives. In *Royalton* v. *R. and W. Turnpike Co.* (14 *Verm. Rep.* 311,) the contract was to keep a certain bridge in repair for a certain number of years, and a breach occurring during the term, it was held that the plaintiff was entitled to recover damages for the whole unexpired term. In *Masterton* v. *The Mayor &c. of Brooklyn*, (7 *Hill*, 61,) the plaintiff had contracted to furnish the defendants, during five years, with marble for the building of the City Hall of Brooklyn, at a specified price, and the defendants, after a portion of the time had expired, and a portion of the marble was delivered, declined to receive any more. The plaintiff was held entitled to recover, as upon an entire contract, damages on account of the whole quantity of marble which he would have been entitled to deliver under the contract. In *Stuyvesant* v. *The Mayor &c. of New York*, (11 *Paige*, 414,) the defendant had conveyed to the city of New York certain lands for a public square, and the defendants had covenanted to enclose and improve the same within a reasonable time, and forever thereafter to keep the same exclusively for the uses and purposes

of a public square. The latter was held a continuing covenant, furnishing aliment for a suit upon every fresh and affirmative breach of its provisions; and the former was held not to be a continuing but a single and independent covenant, on breach of which entire damages were recoverable, which when recovered, furnished a complete and effectual bar to a second prosecution thereon. In illustration of the character of this latter covenant, the chancellor referred to a covenant to build a house, in which an adjoining or neighboring owner of property was interested, (11 *Paige,* 428,) as presenting a case in which the contract was entire and indivisible; a breach of which entitled the covenantee to damages as for a total and perpetual breach, and forbade a resort to a second action. These cases are sufficient to declare the general rule, within which the case now under consideration is to be ranged. At the time of the breach, Atwood, Cole and Crane were all in the possession and ownership of the premises. They were all grantees in the deed, and were all interested in the covenants in question.

If the suit had been then brought they all would have been obliged to join as plaintiffs therein, and as already stated, would have been entitled to recover damages as for an entire and perpetual breach; the damages were not severable. They represented then the entire cause of action. Have they parted with it since? In other words have they *assigned* to the plaintiff their interest in the cause of action? The defendant claims that they have not; that upon breach of the covenant it became a mere chose in action, like a breach of the covenant of seizin in a deed, (*Bingham* v. *Weiderwax,* 1 *Comst.* 509,) which was to be enforced, then and in the future, by the parties then in the possession of the right, or their legal representatives. As a question of fact I do not see upon the face of the complaint that the cause of action in question was ever transferred to the plaintiff, unless it passed by operation of law. Cole & Crane neither conveyed nor assigned any thing nor agreed to do so, until the 1st of February, 1847.

Then they sold and delivered to the plaintiff certain tools and implements connected with the furnace, and agreed to convey all the nine lots of land with the appurtenances and all the privileges and rights which Atwood, Cole & Crane purchased *and received* of Norton & Cushman, and that the real estate after that date should be at the risk of the plaintiff, who forthwith took possession thereof. On the 1st of February, 1848, they consummated this agreement by an actual conveyance in accordance with its provisions. Neither of these transfers therefore purported to convey any right or cause of action which had already accrued by breach of the agreement in question; nor indeed did they purport to convey, *in terms*, any right or interest covered by the covenants now in dispute. The plaintiff contends that though not conveyed in terms, the rights and interests secured, and intended to be protected by this covenant, passed as a right of way incident, appurtenant, or appendant to the grant of the real estate. If it be conceded that this is so, it would not cover breaches already incurred; and I have already endeavored to show that the breach, when it occurred, was entire, and involved as a legal necessity the right to recover all damages for future infractions of the covenant.

I do not therefore deem it necessary to discuss the question whether this is a covenant running with the land and passing to assignees. The defendant contends that it does not: 1. Because assignees are not expressly named in the articles of agreement. 2. Because the covenant is to do something *off* from the land, and separated from it by a public street, (2d street,) and not connected with the land nor appurtenant to it. 3. Because it relates to a thing not in esse at the time of making the covenant. On the other hand the plaintiff contends that it is essentially a covenant for a right of way, intended for the use of, and incident and appurtenant to, the real estate. 2. That the word *assigns* is not necessary, because we must look at the spirit and intent of the covenant, and relating to land and intended to benefit real estate it runs

Atwood *v.* Norton.

with the land and passes to the assignee. 3. That it is a *continuing* covenant, and that every day's neglect or omission to supply or furnish such road, is a fresh breach, for which an action will lie, until such road be furnished.

For reasons before stated, I do not regard this last proposition as sound, or as announcing the correct view of the law; nor the breach of the covenant as alleged in the complaint as intended to cover continuous breaches, but only as the general breach negativing the performance of the covenant as contained in the articles. And if I am right in the view above taken, that the covenant, when broken, converts the claim into a chose in action, for which the remedy must be sought by the parties interested in it at the time the cause of action accrued, unless it has been subsequently assigned; it is unnecessary to investigate the somewhat embarrassing question whether this belongs to that class of covenants which run with the land.

The result is, that there is a defect of parties plaintiff in the action; that the court below were right in their disposition of the case; and that the judgment of the circuit court must be affirmed.(*a*)

[ALBANY GENERAL TERM, May 3, 1858. *Wright, Gould* and *Hogeboom*, Justices.]

(*a*) Affirmed by Court of Appeals, September term, 1858.