MALINS *vs.* BROWN, &c. executors of MUNROE.

| 4 | 403 |
|---|---|
| j165 | 509 |
| j165 | 512 |

Whether the mere payment of money will, in equity, take a verbal contract for the sale of lands out of the operation of the statute of frauds, *quere.*

Where a party has paid money upon a contract within the statute, and a recovery of the money will not restore him to his former situation, he is entitled in equity to a specific performance of the contract.

An agreement to discharge the lien of a mortgage on lands without payment of the mortgage debt, *it seems,* is within the statute of frauds.

Where A. agreed to purchase land of B. on condition that a mortgage on the same and other lands held by C. should be discharged from the land intended to be purchased, and it was thereupon verbally agreed between A., B. and C., that a part of the consideration to be paid on the purchase should be paid on the mortgage to C., who should at the same time execute a release of that part of the mortgaged premises, and the purchase was completed accordingly, A. paying down the consideration money, of which C. the mortgagee received the sum agreed on, but C.

excused himself from executing the release at that time, saying that he would give it at any time when called upon; *held*, that A., notwithstanding the statute of frauds, was entitled in equity to a specific performance from C. of the agreement to execute the release.

A. having been drawn into a purchase which he would not have made but for the agreement of C. to discharge the lien of the mortgage, a recovery from C. of the money paid to him would not restore A. to his former situation; and this would operate as a fraud upon him unless the agreement were carried into complete execution.

[404] A party who is entitled to a specific execution of an agreement to release his land from the lien of a mortgage, may maintain a bill for that purpose notwithstanding before the filing of the bill he has conveyed away the land, such conveyance being with warranty.

Nor is it any defence to such a bill, that the mortgage also incumbers other lands liable to be first sold to satisfy the mortgage, and of sufficient value for that purpose.

THE bill in this cause was filed by John Malins, against Brown and others, executors of Nathan Munroe deceased, for the purpose of enforcing an agreement alledged to have been made by the decedent, to discharge certain lands from the lien of a mortgage held by him.

Malins, in 1836, negotiated with one Heman Ward for the purchase of forty acres of land situated in Brutus, Cayuga county, for which he was to pay $1500. Munroe, the defendant's testator, at that time held a mortgage on the same lands and on other lands for about $2200, which had been given by Ward in 1833. Malins declined to complete the purchase unless the forty acres which he proposed to buy should be released from the mortgage; and it was thereupon verbally agreed between Malins, Ward and Munroe, that $700 of the purchase money should be paid to Munroe to apply on his mortgage, and that he should thereupon release the forty acres from the lien of the mortgage. The purchase was thereupon consummated and the consideration paid down, of which $700 was paid on the mortgage. The deed given by Ward to Malins contained the usual covenant of warranty. Munroe alledged some excuse for not executing the release at the same time, and promised to execute it at any time when called upon. He was called upon during his life, but did not give the release. After his death the defendants, his executors, were also called upon for the same pur-

pose, but they declined, alledging that they knew nothing of the pretended agreement. In the year 1837 the plaintiff sold the premises in question to one Drake, and gave a deed therefor containing a covenant of warranty.

The vice chancellor of the seventh circuit, before whom the cause was originally heard on pleadings and proofs, sustained the bill, and decreed that the executors execute a release of the mortgage as to the forty acres of land in question. The su- [405] preme court in the seventh district affirmed the decree, and the executors of Munroe appealed to this court.

*Geo. F. Comstock,* for appellants. I. Malins having conveyed away all his interest in the land, can not maintain the bill. It should have been filed by the owner, whose title was incumbered or clouded. No other party had any immediate interest in the specific performance of the alledged agreement. As a bill *quia timet* merely, the plaintiff can not sustain it, because he shows no reason for his apprehensions. He only shows a remote possibility of danger, and does not even suggest a probability. There could be no liability until an eviction of the present owner, and even then there would be an immediate remedy against Ward, the plaintiff's grantor. Furthermore, in case of a foreclosure of the mortgage, the residue of the premises would be first sold, and there is no suggestion that this would not pay the mortgage. The alledged promise is founded upon no consideration which can sustain it. Munroe received no benefit, for he only got part of the pay upon his mortgage. Malins received no harm, for he only paid just what was due on his purchase. Nor is any actual danger of harm pretended.

II. The alledged agreement is within the statute of frauds; and not having been reduced to writing, is void. The payment of $700 on the mortgage will not take the case out of the statute. Payment of part of the consideration money on an agreement, where there are not other equitable circumstances, will not take a case out of the statute. A verbal agreement within the statute will not be enforced, unless it will operate as a fraud not to enforce it. In this case there is no allegation or pretence that the

strict application of the statute will operate as a fraud upon the plaintiff, or injure him in any way whatever.

*Wm. Porter, Jr.* for respondent. The agreement to discharge the mortgage was made with Malins, and as he conveyed the premises with warranty, he is still interested in the specific performance of the contract, and is therefore a proper party to [406] maintain the suit. The statute of frauds does not apply to the case. The agreement was to be executed at the time it was made. The statute applies only to agreements to be performed at some future time. In this case the money was to be paid and the release executed at the same time. Munroe received the money, but on some excuse of business declined then to give the release. It is difficult to discover what the statute of frauds has to do with such a case.

But if the parol agreement was within the statute, the part performance by Malins was sufficient to take the case out of its operation. In cases of part performance, courts of equity inquire whether a non-execution of the agreement will work a fraud upon the other party. In this case, the land having been sold by Malins with covenants of warranty, he would be liable if the premises should be sold under the mortgage; and the plaintiff would clearly have no remedy against Ward for that portion of the purchase money received by him, and it is at least questionable whether he have any against Munroe for the part which he received.

GARDINER, J. According to the bill, and the proofs in the cause, it appears that Malins and Ward were negotiating for the purchase and sale of a lot of land, owned by the latter, upon which, together with other lands, a mortgage held by N. Munroe, the defendants' testator, was a lien; that Malins insisted that the premises should be discharged from that incumbrance before he would complete the purchase. It was then arranged between the mortgagee, Malins, and Ward, that the purchase money should be paid, that Munroe should receive $700 out of it, and release his lien upon the premises, which were to be conveyed to the vendee. The parties met accordingly, at the office

of Munroe, the purchase money was paid, and $700 received by the mortgagee, and a deed executed by Ward ; when Munroe, *after* obtaining the money, assigned business with others as an excuse for not then executing his release. No release was ever executed, although repeatedly demanded of Munroe in his lifetime, and of his executors since his death; and this bill [407] was filed to compel its execution.

The defendants insist upon the statute of frauds. To permit them to avoid the agreement upon this ground, would be to make the statute an instrument of fraud, instead of a shield against it. The money was paid by Malins and accepted by Munroe, as a complete performance of the agreement upon the part of the former. It was paid, relying upon the release of Munroe, which was *then* to be executed, and not upon his contract, that it should be given at a future period.

It is said that the payment of money will not take the contract out of the statute. This may be considered as an unsettled question, where the contract is for the sale of lands. It has been decided both ways in England. (13 *Ves.* 461, *n.* 1, *Sumn. ed.* ; 3 *Atk.* 1; *Carman* v. *Cooke,* 1 *Sch. & Lef.* 40.) In *Wetmore* v. *White,* (2 *Cai. Cas. in Err.* 109,) it was assumed, that payment of the consideration entitled the party to a specific performance. The reason assigned by those who deny that payment of the consideration is, in equity, a part performance, is that the money may be recovered back, and the party reinstated in his former condition. This reason, which has been deemed unsatisfactory, has no application to this case. The *whole* purchase money was paid, and the sale consummated, upon the assurance that the release would be given. The recovery of the $700 and interest would not indemnify the vendee. He has been drawn into a purchase, which he would not have made, independent of the agreement of Munroe. That will always be considered a part performance, " which puts a party in a situation which is a fraud upon him, unless the agreement is executed." (2 *Story's Eq.* § 761.) Such was the condition of the vendee in this case, and he is entitled to relief notwithstanding the statute.

2d. The liability of Malins, upon his covenant of warranty,

was an interest sufficient to enable him to maintain the suit. If he had paid the purchase money to Ward, of the forty acres, without insisting upon the release, the premises would only have been liable, upon the contingency that the *other* lands of the [408] vendor, embraced in the mortgage, were insufficient for its payment. The whole object of the arrangement with Munroe was to avoid this contingent liability. It exists now, in another form; and the executors of Munroe have no right to insist that it is so remote, that the performance of the agreement of their testator will be of no importance to the other party. The complainant, Malins, had the right to stipulate for an exemption from a danger to himself or his estate, merely possible; much more, for the discharge of a subsisting legal incumbrance upon the lands purchased by him. The testator received the consideration and made the agreement; and if the executors believe what they alledge, they have no excuse for resisting its performance, as the estate they represent can not be injured. The decree must be affirmed.

TAYLOR, J. I think all the requisites to sustain a bill for a specific performance, exist in this case, namely: there is a valuable consideration both in the way of benefit bestowed and of disadvantage sustained by the complainant, who seeks to enforce the contract. Its enforcement is practicable and necessary; or in other words, it is really important to the complainant, and is not oppressive to the defendant. (*See Adams's Doct. of Eq. p.* 78, 85.) Malins made it a condition precedent to his perfecting the purchase of Ward, that the land should be relieved from the lien of Munroe's mortgage. And upon the promise of Munroe so to relieve it, on the payment of seven hundred dollars, to apply upon that mortgage, he did perfect the contract with Ward—took his title and went into possession. The payment of this money was a direct advantage to Munroe. And after the complainant had consummated his contract with Ward, on the faith of Munroe's promise, it was impossible for him to be placed in the same condition he was before the agreement, had he been so disposed, on Munroe's refusal to perform on his part.

Malins *v.* Brown.

It is not within the province of the court to inquire whether he is as safe without the release as with it. It is impossible for us to know all the motives which governed him, at the time. It is sufficient for us, that Malins made it a condition of [409] his purchase, that this property should be transferred to him clear of all incumbrance ; and that the mortgagee had agreed to release his lien upon terms which were fully complied with by the complainant.    The equity therefore is clearly with him.

It was further contended, that although the equities were sufficient to sustain the bill, Malins was not the proper party, inasmuch as he had parted with his interest in the land ; and the remaining property covered by the mortgage being sufficient amply to secure it, he had no interest to justify him in filing the bill.    But Malins had conveyed the property by a deed with the covenant of warranty, and although at this time the residue of the land may be of sufficient value to satisfy the mortgage, he and his heirs or representatives have no security against the fluctuations in value which are daily occurring ; or even against the failure of title to the residue of the land covered by the mortgage.    These are all sufficient causes for apprehension in his or their minds.    But I conceive that it does not belong to the defendants to interpose such an objection to the fulfilment of Munroe's promise; for if the remaining security be ample, their withholding the release would seem to be a mere act of wanton injustice.

The only other ground upon which the suit was defended was that the agreement was void by the statute of frauds.   It may well be doubted whether a parol agreement to discharge or release land from the imperfect lien of a mortgage, before forfeiture or foreclosure, affects such an " estate or interest in, or trust or power over or concerning lands, or relating thereto," as is required by the statute to be in writing; for it has often been decided in this state, and such seems to be the established law, that " a mortgage is not a conveyance of land within the statute of frauds, so as to require the assignment thereof to be in writing." (*Runyan* v. *Mercereau,* 11 *John.* 534.) . So too, the assignment of the bond or debt secured by mortgage, passes the

interest of the mortgage, the debt being the principal, and the mortgage an accessary which cannot exist as an independent debt; and until proceedings are had for the purpose of enforcing [410] a mortgage of real estate, the interest of the mortgagee may be assigned without deed, by a parol transfer of the debt and mortgage. (*Rigney* v. *Lovejoy*, 13 *New Hamp.* 247; *Jackson* v. *Willard*, 4 *John.* 43; *Jackson* v. *Blodget*, 5 *Cowen*, 202.) A mortgagee has no estate, property or interest in the land until he takes possession. (1 *Rawle*, 325.) The release of a mortgage is therefore no more than a discharge of a chose in action or other chattel security.

But without insisting upon this view of the case, it is a well settled principle that, in equity, part performance takes a parol agreement out of the operation of the statute of frauds. (*Foxcroft* v. *Lyster*, 1 *Colles*, 108; *Morphet* v. *Jones*, 1 *Swans.* 181; *Bowers* v. *Cator*, 4 *Ves.* 95; *Parkhurst* v. *Van Cortlandt*, 14 *John.* 15, 31; *Annan* v. *Merritt*, 13 *Conn.* 479, 491.) The mere payment of money is not a sufficient ground upon which courts of equity consider part performance of a parol agreement as creating an equity to have the agreement specifically executed, notwithstanding the statute, for the money may be recovered back by an action at law. But it is universally agreed that the ground upon which courts of chancery consider part performance of such an agreement as creating such an equity, is that it would be a fraud upon the party if the transaction were not completed. (*Hamilton* v. *Jones*, 3 *Gill & John.* 127; 1 *Bailey's Eq.* 118, 124; *Story's Eq. Jur.* 759.) Nothing therefore will be deemed part performance which does not put the party into a situation which is a fraud, hardship or deceit upon him unless the contract be performed. (*Tilton* v. *Tilton*, 9 *New Hamp.* 386, 390; *Story's Eq. Jur.* 761.) Payment of the purchase money and being let into possession are sufficient. (3 *Gill*, 140, 157.)

The case before us differs essentially from that of a simple agreement to sell upon a suit by the purchaser against the seller; but the differences all go to strengthen the equity of the complainant. It was a contract tripartite. The mortgagor agrees to sell; the mortgagee agrees to release, and upon these

*Jones v. Judd.* *Brown.*

conditions the purchaser agrees to buy. He performs his part of the contract by paying the full purchase money; and in addition to this he is let into the possession of the premises. [411] The mortgagee, in part, performs his part of the contract, by accepting the money, the immediate payment of which was the consideration for his releasing the land from the charge of his mortgagee.

The ground of relief in equity, said Chancellor Kent, in *Parkhurst* v. *Van Cortland,* (1 *John. Ch.* 274,) is the fraud in permitting a parol agreement to be partly executed, and in leading on a party to expend money in the melioration of the estate, and then to withdraw from the performance of the contract.

I have examined the cases with reference to the statute of frauds, because this point was strenuously insisted upon by the counsel, on the argument. But in my view, it is not a case for the application of the statute of frauds at all. That statute was intended to operate upon and to affect contracts relating to land, exclusively executory. The payment of the money and the delivery of the release, in this case were to be contemporaneous acts; and the withholding the release after receiving the money, as the consideration therefor, must be treated by a court of equity as a fraud; and the relief sought is not so much for the purpose of a specific performance of a contract, as that the party may be protected against the possible consequences of the fraudulent withholding of a paper security which belongs of right to the complainant. The decree of the court below should be affirmed, with costs.

Decree affirmed.